UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

| | |
|---|---|
| JOHN CLINT COLLINS, | CASE NO. 11-01180-WSS |
| Debtor. | Chapter 7 |

| | |
|---|---|
| MID-CONTINENT CASUALTY COMPANY, | |
| Plaintiff, | |
| v. | ADV. PROC. NO. 11-00057 |
| JOHN CLINT COLLINS, | |
| Defendant. | |

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND STATUS HEARING

Thomas L. Selden, Counsel for the Plaintiff
Robert M. Galloway and J. Willis Garrett, Counsel for the Defendant

This matter is before the Court on the parties' cross motions for summary judgment as to count II of the complaint under 11 U.S.C. §523(a)(4). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. After due consideration of the pleadings, briefs, evidence testimony and argument of counsel, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Don Brady Construction Company, Inc. ("DBC") executed a General Application and Agreement of Indemnity ("GAAI") with Mid-Continent Casualty Company ("Mid-Continent") in November 2006. Under the GAAI, Mid-Continent issued several performance and payment bonds in 2009 and 2010 for DBC's work on various federal construction projects. The parties do

1

not dispute that although DBC was paid for the federal construction projects, DBC failed to pay approximately $1.6 million ($1,574,230.29) to subcontractors and suppliers for the projects. The GAAI lists "Don Brady Construction, Inc." as the "Principal" under the contract, and the Debtor, John Collins, is identified as an "Indemnitor." The contract also states that the Principal and Indemnitors are sometimes referred to collectively as the "Undersigned." Under paragraph 1, the Undersigned agree to indemnify the Surety (Mid-Continent) against any and all liability stemming from the bonds. Paragraph 4 of the GAAI is titled "Trust Funds" and states that the "Principal" agrees and declares that all funds due under any contract covered by a bond are trust funds, whether in the possession of the Principal or another. Paragraph 4 refers only to the "Principal" and does not refer to "Indemnitors" or the "Undersigned".

John Collins is a 40% owner of DBC and an officer in the company, although the parties have not specified a particular office. In his affidavit, Collins stated that he worked on construction projects doing work necessary for the completion of jobs for DBC. He has no education past high school and stated that he was not involved in the receipt of funds from customers for job progress payments, payments to subcontractors, suppliers or labor. Collins also stated that he had no involvement with DBC's financial affairs from 2007 to 2010. According to Collins' deposition testimony, his brother, Cleve Collins, was the president and chief operating officer during the time period at issue. Collins also testified that he was not involved with obtaining the bonds and did not negotiate contracts or pricing for jobs. In his affidavit, Collins stated that he had a cancerous tumor removed in 2003; the disease was in remission for several years, but his condition deteriorated in 2008. In 2010, Collins was diagnosed with cancerous gist tumors in his abdomen, which were surgically removed in July

2010. Collins began chemotherapy after the surgery. This illness prevented him from participating in the day-to-day operations of DBC. He filed a chapter 7 petition on March 11, 2011.

Collins stated in his affidavit that he learned that some of DBC's subcontractors were not being paid in September 2010, and met with an unpaid subcontractor in November 2010. Collins is an authorized signatory on DBC's checking account. Mid-Continent presented a series of checks written from Collins' personal account and deposited in DBC's checking account. There were approximately seven such incidents, five occurring between February 2009 and June 2009, and two more occurring in February 2010. In each incident, DBC's account had a low balance. Collins would issue a check (the smallest amount was $5,000 and the largest amount was $75,000) to DBC, and the check would greatly exceed the balance in Collins' account. DBC would immediately issue a check in the identical amount to Collins.

DBC's corporate American Express account was cancelled in late 2008. In February 2009, DBC's president, Cleve Collins, was added as a cardholder to the Debtor's personal American Express account. The Debtor testified in his deposition that he allowed Cleve Collins to use his personal American Express account for DBC business expenditures. After Cleve Collins became a cardholder, the Debtor forwarded the statements for the American Express account directly DBC for payment. He did not open and review the statements. Mid-Continent presented evidence that the American Express account had charges for non-business related items including school tuition, medical and veterinary bills, clothing, jewelry and gambling excursions. DBC paid the American Express bills. Cleve Collins, not the Debtor, was responsible for the vast majority of the non-business related charges, but the Debtor also made

3

Case 11-00057    Doc 55    Filed 11/26/12    Entered 11/26/12 15:02:42    Desc Main
Document      Page 3 of 7

some non-business charges. Mid-Continent identified approximately $1,242.00 in charges made by the Debtor. By comparison, Cleve Collins charged $64,502.19 in February 2010 alone. The Debtor testified in his deposition that he was not aware of his brother's charges to the American Express card because he was not involved with the business during this time due to illness.

**CONCLUSIONS OF LAW**

Rule 56, as adopted by Bankruptcy Rule 7056, provides that summary judgment must be entered if the evidence presented shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of proof to show that there are no genuine issues of material fact. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994). The non-moving party then must show that an issue of fact exists. *Id.* The court must view the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Both parties assert that the pertinent facts in this case are undisputed, and that there are no genuine issues of material fact. This leaves the Court to apply the law to the facts presented. Mid-Continent maintains that the debt owed by Collins is non-dischargeable pursuant to 11 U.S.C. §523(a)(4), which precludes discharge of debts for fraud or defalcation while acting in a fiduciary capacity. Under §523(a)(4), the creditor must show (1) fraud or defalcation and (2) a fiduciary relationship. Courts recognize a "voluntary, express trust created by contract" to be "within the scope of 'fiduciary capacity' as used in §523(a)(4)." *In re Fernandez-Rocha,* 451 F.3d 813, 816 (11th Cir. 2006).

Mid-Continent argues although corporate officers are generally not liable as fiduciaries under §523(a)(4) for corporate debts, there is an exception "when the corporation is entrusted with funds for a particular purpose and the debt owed to the creditor bears a special relationship to the funds." *In re Manzo*, 106 B.R. 69, 72 (Bankr. E.D. Pa. 1989). Mid-Continent asserts that the GAAI created an express trust with the funds paid under the bonded contracts as the *res* and the Debtor as a fiduciary. Mid-Continent cites several other cases that elaborate on this theory, including *In re Harper*, 150 B.R. 416, 419 (Bankr. E.D. Tenn. 1993), which noted "[w]hen there are fiduciary responsibilities of a corporation, it is the employee or officer responsible for implementing the fiduciary responsibilities who is liable for any acts of defalcation." In reviewing the cases cited by Mid-Continent, the Court notes that the cases imposed personal liability under §523(a)(4) on debtors who were charged with actually performing the fiduciary duties, and who held positions such as president in the corporation. Mid-Continent argues that the Debtor, as an officer of DBC and 40% shareholder, was actively involved in DBC's financial affairs as indicated by the series of checks from the Debtor to DBC in 2009 and 2010, and the use of the Debtor's American Express account beginning in 2009. However, Mid-Continent has not presented any evidence that the Debtor had a role or any authority in DBC's financial operations. His background is in construction, and Mid-Continent has not shown that the Debtor did more than supervise construction sites for DBC. As an officer and shareholder, it is not unusual that the Debtor would be asked to take actions like making deposits to DBC's bank account and allowing DBC to use his American Express account in an effort to keep the corporation financially afloat and operating. However, these actions by the Debtor do not show that he was the officer responsible for segregating the funds received from the contracts bonded by Mid-

5

Continent and paying the funds to the appropriate parties. Further, Mid-Continent has not shown that the Debtor was the officer who used the funds from the bonded contracts for purposes other than paying the subcontractors for the designated jobs. Therefore, the Court finds that the exception stated in *Manzo* and similar cases does not apply in this case, and the Debtor is not a fiduciary under this exception.

Collins points to the wording of the GAAI, and asserts that only the "Principal", who is specifically identified as DBC in the GAAI, agreed to hold the funds from the bonded contracts in trust under paragraph 4. Collins is an "Indemnitor" under the GAAI, and therefore not included under paragraph 4. Mid-Continent cites several cases finding that trust provisions in general indemnity agreements signed by individual debtors as indemnitors for performance and payment bonds create a fiduciary relationship with the surety. See *In re McCormick*, 283 B.R. 680 (Bankr. W.D. Pa. 2002); *In re Smith*, 238 B.R.664 (Bankr. W.D. Ky 1999) and *In re Fox*, 357 B.R. 770 (Bankr. E.D. Ark. 2006). However, in each of these cases, the language of the trust provision of the indemnity agreement specifically identifies and includes "indemnitors" as parties responsible for holding the funds in trust. As stated above, the GAAI in the present case applies only to the Principal, which is DBC. The Debtor is an indemnitor. The GAAI imposes no fiduciary duty on indemnitors, therefore the Debtor was not liable as a fiduciary under the agreement. Because the Debtor has proven that he was not in a fiduciary relationship with Mid-Continent Casualty, it is not necessary for the Court to consider whether the Debtor's actions amounted to "defalcation" under 11 U.S.C. §523(a)(4).

Based on the foregoing, the Court finds that Mid-Continent has failed to prove that it is entitled to judgment as a matter of law as to count II under 11 U.S.C. §523(a)(4), and the Debtor

6

has proven that he is entitled to judgment as a matter of law as to count II under 11 U.S.C. §523(a)(4). Therefore, Mid-Continent's motion for summary is due to be denied and the Debtor's motion for summary judgment is due to be granted. It is hereby

**ORDERED** that Mid-Continent Casualty Company's motion for summary judgment is **DENIED** as to count II under 11 U.S.C. §523(a)(4); and it is further

**ORDERED** that the Debtor's motion for summary judgment is **GRANTED** as to count II under 11 U.S.C. §523(a)(4); and it is further

**ORDERED** that the case is set for **STATUS** as to the remaining counts of the complaint on **Tuesday, December 18, 2012 at 8:30 AM.**

Dated: November 26, 2012

*/s/ William S. Shulman*
WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE